IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

| | | |
|---|---|---|
| SMOKY HILLS WIND PROJECT II, LLC, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-00054-CV-NKL |
| | ) | |
| CITY OF INDEPENDENCE, MISSOURI, | ) | |
| | ) | |
| Defendant/Counterclaimant. | ) | |

**ORDER**

Plaintiff/Counterclaim Defendant Smoky Hills Wind Project II, LLC and Defendant/Counterclaimant City of Independence, Missouri entered into a Renewable Energy Purchase Agreement, and now dispute their respective rights and obligations under that agreement. Smoky Hills moves for summary judgment on Count I of its Complaint—for breach of a contractual provision regarding prepayment of amounts in dispute, and asks the Court to enter an order for specific performance. [Doc. 32.] Smoky Hills' motion is denied.

**I.    Background[1]**

   **A.    The Purchase Agreement**

Pursuant to the purchase agreement, Smoky Hills built and operates a Renewable Energy Facility, consisting of wind turbines and associated equipment, in Kansas. Energy generated by the Facility is transmitted through Midwest Energy, Inc.'s interconnection facilities, and Southwest Power Pool, Inc. (SPP) controls and operates the transmission system. Smoky Hills began selling energy to Independence under the purchase agreement in 2008. The purchase agreement provides that Smoky Hills sells to Independence the "Entire Facility Output,"

---

[1] The recited Background facts are undisputed.

meaning "the aggregate amount of renewable energy generated exclusively by the Facility, including any and all associated Environmental and Renewable Energy Credits, and delivered to the Point of Delivery[.]"  [Doc. 33-2, p. 9, Sec. 1.3(V).]

As provided in Article 8 and 9, the purchase agreement allocates the risk of loss relating to the curtailment, or reduction, of Smoky Hills' delivery of energy to Independence, and establishes a prepayment and refund procedure.  Essentially, Smoky Hills invoices Independence for energy Smoky Hills would have delivered but for an Emergency or Economic Curtailment.  The parties are to use reasonable efforts to determine the quantity of Renewable Energy that would have been produced by the Facility had its generation not been subject to Emergency Curtailment or an Economic Curtailment.  Independence pays the amounts invoiced, and in the case of an Emergency Curtailment, may then receive a refund, if it provides reasonably satisfactory documentation to Smoky Hills evidencing the date and duration of the Emergency Curtailment.  The purchase agreement does not expressly provide a time limit for invoicing for curtailments.

In addition to the billing dispute provision found in Section 9.4 relating to curtailments, the purchase agreement includes a general Dispute Notice and Resolution process designed to precede a party's pursuit of available legal remedies.  [*Id.*, pp. 35-36, Sec. 12.10.]

Smoky Hills and Independence agree that their purchase agreement is a valid, enforceable contract.

### B. The parties' dispute

As relevant here, the SPP ordered a series of curtailments beginning in March 2012. Mark McGrail, a representative of Smoky Hills, wrote to Independence's Power and Light Director on March 12, 2013, explaining Smoky Hills had been reviewing SPP's 2012 curtailment

directives. [Doc. 35-1, p. 7.] McGrail stated Smoky Hills had "determined such curtailments were not the result of an 'Emergency' and as a result, [Independence] is obligated to pay [Smoky Hills] for such energy that would otherwise have been delivered and for the Tax Benefits which [Smoky Hills] did not receive during the Curtailment Events." [*Id.*] Smoky Hills then sent an invoice to Independence, dated March 26, 2013, reflecting charges of $331,990.91 for the 2012 curtailments. Throughout 2013 and 2014, Smoky Hills sent additional invoices to Independence, reflecting charges for curtailments Smoky Hills had similarly determined were not Emergency Curtailments, but Economic ones.[2] The grand total invoiced by Smoky Hills was $563,201.26.

Independence refused to pay the invoices and the parties undertook the dispute resolution process provided under Section 12.10 of the purchase agreement. Independence made a payment of $18,648.16 for the invoiced amounts for curtailments for the periods April 2013 and May 2013, reserving its right to dispute the nature of the curtailments.

As relevant to Smoky Hills' motion for partial summary judgment, Smoky Hills claims it is entitled to an order requiring Independence's specific performance, that is, an order requiring Independence to immediately pay the disputed balance of the invoiced amount, or $544,553.10, to Smoky Hills "to hold…pending proof from Independence that the Curtailments were Emergency Curtailments[,]" per the purchase agreement prepayment provision. [Doc. 36, p. 10.]

## II. Discussion

Specific performance is an equitable remedy, and is not available if there is an adequate remedy at law. *Hochard v. Deiter*, 549 P.2d 970, 973-74 (Kan. 1976) (*citing* 71 Am. Jur. 2d,

---

[2] Smoky Hills sent an invoice on April 18, 2013 for $110,832.56 relating to curtailments in the first quarter of 2013; on January 7, 2014 for $10,111.58 relating to November 2013; on June 9, 2014 for $17,294.41 relating to February 2014; and on September 3, 2014 for $4,487.93 relating to July 2014.

3

*Specific Performance*, § 7); and *Miller v. Alexander*, 775 P.2d 198, 204 (Kan. App. 1989).[3] An adequate remedy must "be as plain, adequate, complete and efficient as the remedy of specific performance, and not circuitous or doubtful." *Miller*, 775 P.2d at 204. "[T]hat a party can avail himself of *some* relief at law does not defeat jurisdiction of equity to decree specific performance." *Finkenbinder v. Dreese*, 363 P.2d 465, 466 (Kan. 1961) (emphasis added). But compensatory damages will usually constitute an adequate remedy, unless the party cannot be fully compensated or when damages may not be accurately ascertained. 71 Am. Jur. 2d. *Specific Performance*, § 12.

Thus, for example, the Kansas Supreme Court affirmed a grant of specific performance of a contract requiring the plaintiff to be paid commissions on future sales of cans of hydraulic lubricant, because the amount of future sales could not be accurately calculated and reduced to a damages award. *Scott v. Sw. Grease and Oil Co.*, 205 P.2d 914, 918 (Kan. 1949). The court also noted that an inefficient multiplicity of suits would have ensued if the plaintiff's remedy was to seek payment of commissions as they became due to him. 205 P.2d at 918.

Here, Smoky Hills has established no facts to justify specific performance of its claim for prepayment of the disputed curtailments, inasmuch as it has not shown that an award of damages will not fully compensate it, or that damages cannot be accurately ascertained. Smoky Hills and Independence dispute the nature the curtailments, and whether the amount of energy curtailed has been adequately documented, but Smoky Hills does not claim that the amount allegedly due it for the curtailments cannot be accurately ascertained. Smoky Hills has in fact pleaded the precise amount it claims is due. Therefore, this case is unlike *Scott*, 205 P.2d at 918, where the damages could not be accurately calculated, and specific performance was ordered. *C.f.*, *Allen*

---

[3] Under the choice of law provision contained in the purchase agreement, Kansas law applies to the parties' dispute.

*W. Hinkel Dry Goods Co. v. Wichison Ind. Gas Co.*, 64 F.2d 881, 884 (10th Cir. 1933) (gas company entitled to specific performance of contract for sale of gas to buyer; the commodity was not readily attainable or saleable on the general market, and damages would have been difficult to calculate because of the length of the contract and uncertainty regarding the amount of gas that the buyer would purchase); *Central Ill. Public Service Co. v. Consolidated Coal Co.*, 527 F. Supp. 58, 67 (C.D. Ill. 1981) (coal producer contracted to provide coal for a power plant and to construct a coal mine adjacent to the plant, with a conveyor belt system transporting the coal to the plant; after the power plant abruptly canceled the contract, the court granted a preliminary injunction, finding that the coal producer had no adequate remedy at law "because its damages will be very difficult of ascertainment").

Smoky Hills argues that absent specific performance of the prepayment provision, the purchase agreement's dispute resolution procedures will be meaningless, because Smoky Hills bargained for a right to prepayment, among other things, and has had to file suit to enforce that right. But Smoky Hills has failed to show how it was damaged by the failure to prepay, other than a bare statement that its rights to participate in the dispute resolution process were impaired. More importantly, it has failed to explain how the failure to prepay cannot be adequately compensated by money damages, such as interest on the money not timely paid or additional costs of litigation that would not have been incurred. Nor does Smoky Hills explain how filing a lawsuit to enforce the agreement is materially different from defending a lawsuit for a refund, assuming that the burden of proof issue is not shifted to Smoky Hills as a result of being a plaintiff.

Further, Smoky Hills does not show that receiving the funds later, rather than sooner, will cause it not to be fully compensated, assuming it is entitled to compensation. The court in *Jay*

5

*County Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 692 N.E. 2d 905 (Ind. Ct. App. 1998), held that a seller of electricity was entitled to specific performance because delay could foreclose future payment of damages. The seller was a wholesale supplier of electricity; the buyer had a long-term contract for purchase of electricity from the seller, and repudiated the contract. *Id.* at 907. The trial court found that the buyer would be unable to, or have great difficulty, paying a future award of damages, and the seller therefore did not have an adequate remedy at law. *Id.* at 910. The trial court entered a preliminary injunction in favor of the seller, requiring the buyer to continue purchasing electricity from the seller, and the appellate court affirmed. *Id.* Smoky Hills demonstrates no such unique facts.

As the moving party, Smoky Hills bears the burden of demonstrating its entitlement to summary judgment, but it has not provided evidence of any harm that cannot be remedied by a later award of money damages. To rule otherwise, on the evidence provided, would eviscerate the rule that resort to the equitable remedy of specific performance is unavailable when money damages are available at law.

Smoky Hills cites *Orion Ethanol, Inc. v. Evans*, No. 08-1180-JTM, 2009 WL 2355274 (D. Kan. July 29, 2009), in support of its argument that specific performance is appropriate to enforce a payment provision of a contract, but the case does not change the analysis. The Kansas District Court's decision is not binding on this Court. Moreover, that decision neither discusses nor even cites any relevant Kansas law in support of the holding.

As discussed above, Smoky Hills has failed to show it is entitled to specific performance with respect to Count I of the Complaint. In view of the foregoing, Independence's arguments about waiver and adequacy of documentation of the curtailments need not be reached.

6

Case 4:15-cv-00054-RK   Document 43   Filed 07/13/15   Page 6 of 7

### III. Conclusion

Plaintiff Smoky Hills' motion for partial summary judgment [Doc. 32] is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  July 13, 2015
Jefferson City, Missouri